UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
NOV 29 2004
Clerk, U.S. District Court
District of Columbia

JOSEPH A. CARABILLO,        )
                            )
   Plaintiff,              )
                            )
v.                          )   Civ. Action No. 04-776
                            )
ULLICO INC. PENSION PLAN    )
AND TRUST, et al.,          )
                            )
   Defendants.             )

## MEMORANDUM OPINION AND ORDER
(November 29, 2004) [#3]

Before the Court is the plaintiff's Motion for Preliminary Injunction [#3]. On May 13, 2004, the plaintiff, Joseph A. Carabillo ("Carabillo"), former Chief Legal Officer of ULLICO, Inc., filed a complaint and a motion for temporary restraining order and preliminary injunction, requesting this Court to issue injunctive relief enrolling him in certain retirement and health benefit plans (collectively, "the Defendants")[1] stemming from his previous employment. On May 26, 2004, following oral argument, the Court

---

[1] The named defendants in this action are the ULLICO Inc. Pension Plan and Trust, the Administrator of the ULLICO Inc. Pension Plan and Trust, the Plan Administration Committee of the ULLICO Inc. Pension Plan and Trust, former members of the Plan Administration Committee ("John Does 1-20"), the ULLICO Inc. Employees' Life and Health Welfare Plan, Administrator of the ULLICO Inc. Employee's Life and Health Welfare Plan, the Union Labor Life Auxiliary Retirement Benefits Plan, and the Administrator of the Union Labor Life Auxiliary Retirement Benefits Plan.



denied the Motion for Temporary Restraining Order. The Court now considers the accompanying Motion for Preliminary Injunction and for the following reasons, the Court DENIES the motion.

## BACKGROUND

### I.  *The Current and Related Actions Before this Court*

The current action is a related case to three other actions pending before this Court concerning the termination of Carabillo and another former officer of ULLICO amid allegations of corporate misconduct that have been and are currently being investigated by federal and state authorities.[2] The first of these cases was filed by Carabillo on July 18, 2003 ("*Carabillo I*"). In *Carabillo I*, Carabillo brought claims alleging that ULLICO had wrongfully withheld his retirement benefits and terminated his employment in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1140, and state common law. Another former officer of the corporation, James W. Luce, filed a similar suit in the U.S. District Court for the Eastern District of Virginia after he was terminated, which was transferred to this Court on January 23, 2004. A third related action was filed by ULLICO on October 21, 2004, reviving counterclaims that were dismissed by this Court for lack of jurisdiction in the *Carabillo I* case.

On May 13, 2004, with his first case still pending, Carabillo filed the current action, seeking a temporary restraining order and preliminary injunctive relief against the

---

[2] *See Joseph A. Carabillo v. ULLICO, Inc., et al.*, 03cv1556 (RJL); *James W. Luce v. ULLICO., Inc., et al.*, 04cv118 (RJL); *ULLICO, Inc. v. James W. Luce*, 04cv1830 (RJL).

pension and health benefit plans established by ULLICO. ULLICO was not named as a party to this action. Instead, Carabillo brought claims against the benefit plans and their administrators, seeking injunctive relief enrolling him in pension, healthcare, and life insurance benefits during the pendency of this action and *Carabillo I*.

At issue in this case are two benefit plans providing pension, healthcare, and life insurance benefits to current and former ULLICO employees: the ULLICO Inc. Pension Plan and Trust ("the Qualified Plan") and the ULLICO Inc. Employees' Life and Health Welfare Plan ("the Welfare Plan"). Carabillo alleges that he was eligible for and elected benefits from the Qualified Plan pursuant to a June 1, 2003 Early Retirement Program ("Special Early Retirement Program"), and thus should have begun receiving (1) pension benefits under the Qualified Plan, and (2) healthcare and life insurance benefits under the Welfare Plan upon his retirement. Pl. Mem. in Support of TRO/PI 2-3.

According to Carabillo, in April 2003, the Qualified Plan was amended to create the Special Early Retirement Program. Pl. Mem. in Support of TRO/PI 4-5. Under this program, employees who met the required qualifications were eligible to receive unreduced benefits upon early retirement from ULLICO. Id. at 5. The program also provided continued subsidized healthcare and life insurance from the Welfare Plan for those who elected early retirement. Id. In contrast to the Special Early Retirement Program, the regular early retirement provision of the Qualified Plan provides reduced

pension benefits for employees retiring prior to age sixty.[3] Id.

Carabillo alleges that he received notice of the Special Early Retirement Program on April 17, 2003 from ULLICO's Director of Corporate Benefits, Louis Hejl ("Hejl"), who subsequently faxed Carabillo a revised Election and Release Form. Pl. Mem. in Support of TRO/PI 5. Carabillo signed and dated the form on May 7, 2003, and personally delivered it to Hejl, who signed it on May 8, 2003. Id. Carabillo later received a letter, dated May 22, 2003, from ULLICO's Health and Life Benefits Administrator, Jennifer M. Shea, congratulating him on his retirement and stating that his retiree benefits would be effective as of June 1, 2003. Id. at 6.

However, on May 31, 2003, Carabillo received another letter, dated May 30, 2003, from Edward Grebow, then acting President of ULLICO, giving him "formal notification" that his employment with the corporation was being terminated for cause. Pl. Mot. for TRO/PI, Ex. 10. The letter also states: "As you know, the report prepared under the direction of Gov. Thompson suggests you may have breached certain obligations to ULLICO..." Id.

When Carabillo had not received his benefits by June 16, 2003, he sent an e-mail to Louis Hejl, requesting information regarding the status of his benefits and indicating

---

[3] Carabillo alleges that under the regular early retirement provision, the pension benefit for retiring employees is determined by calculating a participant's benefits at age sixty-five and then reducing this amount by 0.3% for each month prior to age sixty-five that benefits commence. Pl. Mem. in Support of TRO/PI 5. Thus, as Carabillo ceased to be employed by ULLICO at age 57, his benefits would be approximately 30% less than the unreduced benefits under the Special Early Retirement Program. Id.

4

that his inquiry should be considered an appeal in the case that the benefits were not forthcoming. Pl. Mem. in Support of TRO/PI 6-7. Carabillo received a letter from Hejl, dated August 13, 2003, in response, indicating that ULLICO was treating his inquiry as a claim for benefits and denying the claim because it had been determined that Carabillo was ineligible for participation in the Special Early Retirement Program as a result of his termination on May 30, 2003. Id.

Carabillo alleges that he has not received pension, healthcare, or life insurance benefits from the Qualified and Welfare Plans. He claims that as a result of his "fixed monthly expenses and the extraordinary expenses [he] has incurred and continues to incur in prosecuting *Carabillo I* and defending against the counterclaims in that action, [he] has exhausted his liquid assets, including the money he received from his 401(k) plan."[4] Pl. Mem. in Support of TRO/PI 8; Carabillo Decl. ¶ 22. Accordingly, to alleviate this "financial hardship," he seeks reduced early retirement benefits, which he believes he is entitled to even if the Court determines he was not eligible for the Special Early Retirement Program, and enrollment in the healthcare and life insurance benefits of the Welfare Plan. Pl. Mem. in Support of TRO/PI 7-8. Carabillo alleges that as a result of the wrongful denial of his benefits, he has been forced to pay $959.62 per month for COBRA health insurance coverage, which will expire in November 2004. Pl. Mem. in

---

[4] Carabillo asserts that his only non-liquid assets "of any appreciable value" are (1) his residence in Virginia which has a mortgage in excess of $500,000, and (2) a house in West Virginia which is under contract for sale and from which he will realize less than $100,000 before taxes. Carabillo Decl. ¶ 22 and n.2.

5

Support of TRO/PI at 9. He claims that he has not been able to afford life insurance. Id.

Based on these facts, Carabillo asserts that preliminary injunctive relief is warranted because he has demonstrated a likelihood of succeeding on his claim of eligibility for the retirement benefits under the terms of the Special Early Retirement Plan, and has also shown "irreparable harm" that will occur in the absence of such relief. Specifically, Carabillo argues that he will suffer "irreparable harm" when his COBRA coverage lapses in November 2004, and also because the premiums he has already paid may be unrecoverable if the Defendants argue that reimbursement of such monies is barred under the Supreme Court's decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002).

For the following reasons, the Court finds that Carabillo has not shown the necessity of preliminary injunctive relief and thus DENIES the Motion for Preliminary Injunction.

## DISCUSSION

### I. *Standard of Review*

This Court may issue a preliminary injunction only when the movant demonstrates: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir.

1998). These factors "interrelate on a sliding scale and must be balanced against each other." *Davenport v. International Brotherhood of Teamsters, AFL-CIO*, 166 F.3d 356, 361 (D.C. Cir. 1999); *Dodd v. Fleming*, 223 F.Supp.2d 15, 19 (D.D.C. 2002) ("*Dodd*"). Accordingly, to determine whether injunctive relief is appropriate, the Court must evaluate and balance the strengths of the movant's arguments as to each of the four factors. However, "[i]f the plaintiff makes a particularly weak showing on one factor...the other factors may not be enough to compensate." *Dodd*, 223 F.Supp.2d at 20 (citing *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995), *amended on other grounds*, 66 F.3d 1226 (D.C. Cir. 1995)). Indeed, courts in our Circuit have held that "if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." Id. at 20 (citing *CityFed Financial Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995)). Furthermore, when a party seeks a mandatory injunction, *i.e.*, to change the status quo rather than to preserve it, the moving party "must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hospital for Women Foundation, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F.Supp.2d 1, 4 (D.D.C. 1997) (citations omitted).

In this case, the Court finds that Carabillo has made no showing with regard to "irreparable injury," and will thus DENY the motion on this ground.

## *II.    Irreparable Injury*

"Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("*Wisconsin Gas*"). The injury must be both "certain and great; it must be actual not theoretical." Id. Indeed, injunctive relief will not be granted "against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931). Thus, the movant must demonstrate that the injury is of such "imminence" that there is a clear and present need for equitable relief to prevent irreparable harm. *Wisconsin Gas*, 758 F.2d at 674.

In support of his Motion for Preliminary Injunction, Carabillo argues that he will be irreparably harmed because his COBRA healthcare coverage will terminate in November 2004 and the premium payments he has already made may be unrecoverable, even if he succeeds on the merits in this action and in *Carabillo I*. He also asserts that he will be irreparably harmed if he is not permitted to elect reduced benefits without prejudice to his claims to unreduced benefits under the Qualified Plan. The Court addresses each of these arguments in turn.

First, with respect to the irreparable harm he will allegedly sustain if he is not enrolled in the healthcare benefits of the Welfare Plan, Carabillo contends, in essence,

that the loss of health insurance benefits -- particularly for those who are unemployed -- constitutes per se irreparable harm for the purposes of a preliminary injunction. Pl. Mem. in Support of TRO/PI 17 (citing *Risteen v. Youth for Understanding, Inc.*, 245 F.Supp.2d 1, 16 (D.D.C. 2002)). While the loss of health benefits under certain circumstances can constitute "irreparable injury" sufficient to warrant preliminary injunctive relief, see, e.g., *Risteen*, 245 F.Supp.2d at 16; *Wilson v. Group Hospitalization and Medical Services, Inc.*, 791 F.Supp. 309, 313-14 (D.D.C. 1992) ("*Wilson*"), courts in our Circuit have found "irreparable injury" where the plaintiff additionally alleges a critical need for healthcare, as opposed to a mere financial hardship, as is alleged by Carabillo. For instance, in *Risteen*, the case cited repeatedly by Carabillo, the court found that the plaintiff's loss of healthcare would result in "irreparable harm" because in addition to the fact that he was unemployed and had no income, he was already foregoing critical medical attention for congestive heart failure and also required prostate surgery. 245 F.Supp.2d at 3, 16. Similarly, in *Wilson*, the court found that the loss of health benefits constituted "irreparable injury" where the plaintiff had been hospitalized as a result of advanced breast cancer and had the court not granted a previous motion for temporary injunctive relief regarding her benefits, "she faced nearly certain death." 791 F.Supp. at 314. Indeed, absent an imminent threat to the plaintiff's health and well-being, courts in this Circuit have only found "irreparable injury" where the loss of health benefits is accompanied by other significant non-compensable harm. *See, e.g., McVeigh v. Cohen*,

9

983 F.Supp. 215, 221 (D.D.C. 1998) (finding "irreparable harm" where plaintiff sought to enjoin the Navy from terminating his employment based on his sexual orientation and he stood to "lose his job, income, pension, health and life insurance, and all the other benefits attendant with being a Naval officer[,]" and faced the "stigma" attached to a termination based on an allegation of homosexuality).

Neither an imminent threat to his health or well-being, nor a significant non-compensable harm confronts Carabillo in this case. Instead, his argument regarding the loss of health benefits appears to focus on his allegation that when he is able to secure healthcare coverage, it will be at "costly" rates. Pl. Mem. in Support of TRO/PI 18. However, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough" to demonstrate "irreparable injury." *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also Boivin v. U.S. Airways, Inc.*, 297 F.Supp.2d 110, 118 (D.D.C. 2003). Accordingly, the Court agrees with the Defendants that Carabillo has not alleged the necessary "irreparable injury" based on the potential loss of healthcare coverage once his COBRA coverage lapses.

Second, in addition to his argument regarding the loss of healthcare benefits, Carabillo also argues that he will suffer "irreparable harm" if he is not enrolled in the Welfare Plan immediately because "it is unclear whether he can recover from [D]efendants those COBRA premium payments that he has already made." Pl. Mem. in

Support of TRO/PI 18. According to Carabillo, the Defendants will likely argue that reimbursement of the COBRA premiums he has paid and continues to pay for healthcare coverage is not "appropriate equitable relief" under section 502(a)(3) of ERISA, 19 U.S.C. § 1132(a)(3). Id.

In *Great-West Life & Annuity Insurance Co. v. Knudson*, the Supreme Court held that "appropriate equitable relief" under section 502(a)(3) does not include legal relief, such as money damages, rather is limited to the relief traditionally available in equity. 534 U.S. 204, 210-13 (2002).[5] Carabillo is asserting, in essence, that although he believes he is entitled to recover his COBRA payments, the Defendants will be able to convince this Court that *Great-West* prevents such recovery, thereby forcing him to "assume the risk each month that he is paying COBRA premiums that he will be unable to recover even if he prevails in this litigation..." Pl. Mem. in Support of TRO/PI 19. While certain types of economic loss may constitute "irreparable harm" under extraordinary circumstances, such arguments of *possible* economic loss are clearly too speculative to be a proper basis upon which to find "irreparable harm."

For example, courts in our Circuit have held that monetary loss may constitute "irreparable injury" where the plaintiff is so poor that he would be harmed in the interim by the loss of monetary benefits. *See Lee v. Christian Coalition of America*, 160

---

[5] For example, a plaintiff could seek restitution in equity where money or property identified as belonging to the plaintiff could clearly be traced to particular funds or property in a defendant's possession. Id. at 213.

F.Supp.2d 14, 31-32 (D.D.C. 2001) (finding of "irreparable harm" where the plaintiffs were so poor that the loss of wages would result in insolvency, eviction, or difficulty in obtaining food); *American Federation of Government Employees, AFL-CIO v. United States*, 104 F.Supp.2d 58, 76 (D.D.C. 2000) (finding of "irreparable harm" where one plaintiff sought relief from threatened termination and was the sole wage earner, supporting a disabled husband). Courts have also recognized that economic loss may constitute "irreparable harm" where the defendant would become insolvent or otherwise judgment-proof prior to the conclusion of litigation, thus making the plaintiff's alleged damages unrecoverable. *See, e.g., Holland v. Frank V. Carlow Irrevocable Trust*, 176 F.R.D. 416, 418-19 (D.D.C. 1997); *Foltz v. U.S. News & World Report, Inc.*, 613 F.Supp. 634, 642-43 (D.D.C. 1985). Neither is the case here.

As to the former, Carabillo has not demonstrated to this Court that his financial situation is so dire that the payment of such premiums will render him destitute. Indeed, he acknowledges that through the sale of his West Virginia property, he may realize approximately $100,000. Financial hardship caused by a forced sale of a house does not rise to the level of "irreparable harm." *Boivin*, 297 F.Supp.2d at 118-19. As to the latter, Carabillo fails outright in demonstrating that the Defendants will become insolvent or otherwise judgment-proof prior to the conclusion of this action or *Carabillo I*.

In short, Carabillo bases his claim of "irreparable harm" on the speculation that this Court will ultimately interpret *Great-West* in favor of the Defendants. Such "vague

and unsubstantiated speculation" fails to demonstrate an actual or imminent injury that is both "certain and great." *American Bioscience, Inc. v. Thompson*, 141 F.Supp.2d 88, 97 (D.D.C. 2001), *vacated on other grounds*, 269 F.3d 1077 (D.C. Cir. 2001). Unlike *American Federation of Government Employees, AFL-CIO*, in which the court found "irreparable injury" where the plaintiffs would lose their income and benefits and both the court and the plaintiffs agreed that they might be unable to recover damages as a result of a federal back pay statute, 104 F.Supp.2d at 76, Carabillo asks this Court to issue the extraordinary relief of enrolling him in benefits programs to shield him from the risk that this Court will interpret the Supreme Court's precedent in *Great-West* incorrectly and in the Defendants' favor. The Court finds this proposition untenable. If *Great-West* indeed prevents recovery of Carabillo's COBRA payments, the Defendants are correct that this Court cannot issue equitable injunctive relief that circumvents Congressional intent in fashioning ERISA's relief provisions. In the alternative, if this Court should subsequently rule that *Great-West* does not preclude Carabillo from recovering such premiums, he will be awarded monies in the form of damages or restitution. In either case, there is no "irreparable injury" justifying relief based on the fact that Carabillo has paid and continues to pay COBRA premiums.

Finally, Carabillo asserts that he will suffer "irreparable injury" if he is not permitted to elect reduced benefits without prejudice to his claims in this action and *Carabillo I* for unreduced benefits from the Qualified Plan. Pl. Mem. in Support of

TRO/PI 20. As is the case with Carabillo's arguments regarding his COBRA payments, absent extraordinary circumstances, economic loss is not grounds for preliminary injunctive relief, even though it may result in financial hardship. Carabillo presents no basis for a finding of "irreparable injury." Accordingly, the Court DENIES the plaintiff's Motion for Preliminary Injunction.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is this 29th day of November, 2004, hereby

**ORDERED** that the plaintiff's Motion for Preliminary Injunction [#3] is **DENIED**.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge